**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**QUINTEL A. WEST,**

        **Plaintiff,**               **CIVIL ACTION NO. 13-CV-14551**

    **vs.**                      **DISTRICT JUDGE JUDITH E. LEVY**

                                 **MAGISTRATE JUDGE MONA K. MAJZOUB**

**SAGINAW TOWNSHIP POLICE**
**DEPARTMENT, et al.,**

        **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Quintel West, currently a prisoner at the St. Louis Correctional Facility in St. Louis, Michigan, filed this action under 42 U.S.C. § 1983, against Defendants Saginaw Township Police Department and five of the Police Department's Detectives, Robert Bean, Jack Doyle, Kevin Gloude, Brian Pitt, and Thomas McInerney, alleging that they violated his Fourth Amendment rights and asserting claims of false imprisonment and malicious prosecution; Plaintiff seeks monetary damages along with a reversal of his sentence. (Docket no. 1.) The Court *sua sponte* dismissed Plaintiff's claims for reversal of his sentence and his claims for monetary damages against Defendants Pitt, McInerney, and the Saginaw Township Police Department. (Docket no. 7.) Thus, Plaintiff's only remaining claims are for monetary damages against Defendants Bean, Doyle, and Gloude. (*Id.*)

Before the Court are Defendants' Motion for Summary Judgment (docket no. 29) and Plaintiff's Motion for Summary Judgment (docket no. 30). The parties each filed Responses (docket nos. 31 and 32) and Replies (docket nos. 33 and 34) related to the Motions. All pretrial

1

matters have been referred to the undersigned for consideration. (Docket nos. 8 and 26.)   The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.   Recommendation

For the reasons discussed herein, the Court should grant Defendants' Motion for Summary Judgment (docket no. 29) and deny Plaintiff's Motion for Summary Judgment (docket no. 30). This matter should be dismissed in its entirety.

## II.   Report

### A.   Factual Background

On May 30, 2012, two armed, partially masked, African American males entered the home of Michael Kuhlman and robbed several individuals who were playing cards in the home; Kuhlman was fatally shot by one of the intruders.   Witnesses informed police that a man known as "Q" was Kuhlman's cocaine dealer-supplier, that "Q" had been to Kuhlman's home twice on May 29, 2012, and that "Q" drove a maroon Chevy Blazer with a silver stripe and chrome wheels; one witness identified a photograph of Plaintiff Quintel West as the man he knew as "Q."   (*See* docket no. 29-3 at 3-4.)

Shortly after midnight on May 31, 2012, Defendant Doyle, after being given Plaintiff's name as a suspect in the murder and a description of the Chevy Blazer, was in his car conducting surveillance outside of Plaintiff's residence.   Having heard this matter on Plaintiff's appeal of his criminal conviction, the Michigan Court of Appeals set forth a factual account of Plaintiff's ensuing arrest:

> . . . The day after the shooting, Doyle saw [West] enter the suspect Blazer as he watched [West]'s residence.   In an unmarked police car, he and another detective

2

[(Defendant Bean)] followed the car onto the freeway.   The Blazer then began to slow down, and the officers did as well; at one point the cars reached approximately 30 miles an hour.   [West] began to get off the freeway using an exit ramp, but as Doyle began to follow him, [West] swerved back onto the freeway, traveling over the "grass or gravel" in the area between the freeway and the ramp.[1]   [West] reentered the freeway in front of a red truck pulling a trailer, causing the truck driver to use his brakes.   The officers continued to follow [West] and [West] was stopped [(by Saginaw City Police Officers)] and arrested for reckless driving.

Intending to impound the car, [Defendant] Bean "reached in, on the front seat" and placed his hand on the center console.   As he did so, the console moved. Bean then lifted the console and noticed a 30-round loaded gun magazine.   He left the magazine, and the car was towed to the police station.[2]   He and [Defendant] Gloude searched the car at the station and recovered the magazine.   Gloude testified that he then saw a corner of a plastic baggie sticking out from between the plastic housing the car's map lights and the roof liner.   When he removed it from the partly attached housing, he saw that the baggie contained 12 pills, later determined to be Adderall.   Gloude then searched the car, and because he had previously found contraband behind car glove boxes, he searched in that area.   He pushed the plastic tabs that allowed the glove box to swing down and found a loaded 9mm handgun.   He also removed black knit caps and a pair of gloves from the car.

*People. v. West*, No. 317109 at 3 (Mich. Ct. App. Dec. 16, 2014).

Plaintiff was taken into custody but was not officially charged with reckless driving; instead, Plaintiff was booked into the Saginaw County Jail and charged with carrying a concealed weapon in violation of MCL 750.227.   (*See* docket no. 33-2 at 1.)     Later that day, May 31, 2012, police obtained a search warrant for Plaintiff's residence to search for:

Evidence of the homicide of Michael Kuhlman . . . including but not limited to weapons, handguns, ammunition, victims' cell phones, stolen cash, illegal narcotics, (illegible) cocaine, crack, drug paraphernalia, residency documents, masks, bandanas, hoodies, face coverings with possible forensic trace evidence and dna.

---

[1] Plaintiff contends that he made this turn because he realized that he had gotten off the highway at the wrong exit.   (Docket no. 30 at 9.)

[2] Plaintiff contends that the magazine was removed from the car at the scene of his arrest. (Docket no. 30 at 9.)

(Docket no. 29-10 at 2.)   Among other items seized were Plaintiff's laptop and cell phone.   (*See* docket no. 29-10 at 10, 11.)

At the time of his arrest, Plaintiff was on bond stemming from two narcotics charges and an obstruction charge.   (*See* docket no. 32 at 8.)   On June 1, 2012, the state District Court revoked Plaintiff's bond.   (Docket no. 33-2 at 2.)   Plaintiff was held pursuant to the Court's revocation of bond, and on June 6, 2012, the police obtained a warrant for Plaintiff's DNA (docket no. 33-6 at 2); on June 11, 2012, the police obtained a warrant for Plaintiff's fingerprints (docket no. 33-7 at 2.) In the meantime, forensic analysts had determined that shell casings found at the scene of Michael Kuhlman's murder matched shell casings fired from the handgun found in Plaintiff's Chevy Blazer.   (Docket no. 29-5 at 3.)

On June 13, 2012, Plaintiff was charged with crimes related to Kuhlman's murder. (Docket no. 29-2 at 2.)   He was ultimately convicted of first-degree felony murder, conspiracy to commit first-degree home invasion, armed robbery, conspiracy to commit armed robbery, carrying a dangerous weapon with unlawful intent, and five counts of possession of a firearm during the commission of a felony.   (*See* docket no. 33-4 at 2.)   His conviction was upheld on appeal.   (*Id.*)

Plaintiff's claims in the instant case arise out of his arrest, the police investigation related to Kuhlman's murder, and his prosecution.   Plaintiff alleges that his Fourth Amendment rights were violated (1) at the time of his "unlawful arrest," (2) when police conducted an "invalid" search of his vehicle, (3) when police obtained his DNA and fingerprints, and (4) when police searched his residence.   Plaintiff further alleges that his rights were violated through false imprisonment and malicious prosecution.   (*See* docket nos. 29 and 30.)

### B.    Governing Law

4

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
>
> > (2) consider the fact undisputed for purposes of the motion;
>
> > (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### C.     Analysis

Before the Court are Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment. Because the arguments in the motions and responses thereto are substantially similar and address many of the same substantive issues, the undersigned will consider them together. Through their Motion, Defendants argue that (1) Plaintiff has failed to establish his Fourth Amendment claims; (2) Plaintiff's claims for false imprisonment and malicious prosecution claims cannot be supported in light of his conviction for first-degree felony murder; (3) Plaintiff's claims for false imprisonment and malicious prosecution are further barred by the *Heck* doctrine; (4) Defendants are entitled to qualified immunity; and (5) Plaintiff's official-capacity claims are barred as a matter of law. (Docket no. 29.) Plaintiff opposes Defendants' arguments and asserts that he is entitled to judgment as a matter of law on each of his claims. (Docket nos. 30 and 31.)

### 1.     Plaintiff's Fourth Amendment Claims of Unlawful Arrest

Plaintiff argues that his initial arrest on May 31, 2012, was improper for several reasons: (1) although Plaintiff was initially arrested for reckless driving, he was never arraigned on that charge; (2) after his arrest, Plaintiff was held for 13 days before his arraignment on other charges; (3) Defendant Doyle did not have probable cause to pull him over and arrest him for reckless

driving; (4) reckless driving is not a felony and, therefore, Defendant Doyle could not arrest Plaintiff for the offense; and (5) it was improper for Defendant Doyle to place Plaintiff under arrest when Plaintiff was pulled over by officers from the Saginaw Police Department, not the Saginaw Township Police Department.   (Docket no. 31 at 5-8; docket no. 30 at 13-14.)

### a.    Probable Cause for Plaintiff's Arrest

A law enforcement officer is authorized to make a warrantless arrest if there is probable cause to believe that the suspect has committed or is committing a crime.   *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988).   In determining whether probable cause existed at the time of the arrest, the court should ask whether Defendants had probable cause to arrest the suspect for any offense.   *Van Heck v. Cnty. of Macomb*, No. 08–13886, 2010 WL 5525364, at *5 (E.D. Mich. Aug. 9, 2010).   "Section 1983 claims predicated on false arrest, false imprisonment, or malicious prosecution fail if probable cause for an arrest is established."   *Hansel v. Bisard*, 30 F.Supp.2d 981, 985-86 (E.D. Mich.1998) (citations omitted). But if there is more than one reasonable interpretation of the facts, the question of whether probable cause existed must be presented to the jury.   *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted).

Whether officers had probable cause to arrest Plaintiff for reckless driving is critical.[3]   As

---

[3] In their opening brief, Defendants contend that Plaintiff was also initially arrested for fleeing and eluding where Defendant Doyle "attempted to stop Plaintiff by activating his emergency lights and siren."  (Docket no. 29 at 15.)  As Plaintiff points out, though, there is conflicting evidence with regard to whether Defendant Doyle activated his lights and with regard to what action Plaintiff took when Saginaw City Police ultimately attempted to pull him over. Defendant Doyle testified at Plaintiff's preliminary examination and never indicated that he activated his lights or that Plaintiff failed to pull over when Saginaw City Police attempted to stop him.  (*See* docket no. 30 at 42.)   Moreover, Defendants appear to have abandoned this argument in their Reply.  (*See* docket no. 33 at 2-3 (noting that Defendant Doyle's "observations clearly establish probably cause for reckless driving").)   But because Defendant Doyle had probable cause to arrest Plaintiff for reckless driving (for the reasons discussed herein), his probable cause

discussed, *infra*, Defendants contend that the warrantless search of Plaintiff's vehicle was appropriate because he was placed under arrest; thus, if the arrest itself was improper, so may be their search.

> Michigan's reckless driving statute provides, in relevant part, as follows:
>
> (1) A person who violates this section is guilty of reckless driving punishable as provided in this section.
>
> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Mich. Comp. Laws Ann. § 257.626.   According to Defendant Doyle (through both his testimony and his police report), he was following Plaintiff southbound on the highway when Plaintiff slowed to a speed of approximately 30 miles per hour.   Plaintiff then exited the highway at an off-ramp.   As Plaintiff neared the top of the exit, he made an abrupt left-hand turn over the median[4] toward the southbound on-ramp.   Plaintiff's maneuver caused a truck entering the highway to apply its brakes.   Plaintiff then continued southbound on the highway where he was ultimately pulled over by Saginaw City Police.   (*See* docket no. 30 at 42-44.)

"A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to information 'a prudent person, or one of reasonable caution,' that the suspect has committed, is committing, or is about to commit an

---

for an arrest for fleeing and eluding is irrelevant.

[4] Much of Plaintiff's argument at his preliminary examination, on appeal, and in this matter center around what Defendant Doyle meant when he said "median."   It is clear, however, that regardless of term used by Defendant Doyle, Plaintiff drove over the unpaved divider between the southbound off-ramp and the southbound on-ramp.   (*See* docket no. 30 at 43-44.)

offense.'   *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).   The undersigned finds that Defendant Doyle had probable cause to arrest Plaintiff for reckless driving.   Plaintiff does not dispute that he slowed down to 30 miles per hour on the highway, that he exited the highway and made a left turn over the unpaved portion of the off-ramp to re-enter the highway in front of another vehicle, or that the vehicle he turned in front of had to apply its brakes.   Whether any such charges against Plaintiff could have resulted in a successful conviction is irrelevant; based on the information he had at the time, officer Doyle was reasonable in his belief that Plaintiff committed the offense of reckless driving.[5]

### b.      Defendant Doyle's Authority to Arrest Plaintiff

Plaintiff's claims that Defendant Doyle did not have the authority to arrest him because he was pulled over by Saginaw City Police and his argument that reckless driving is not an arrestable offense are similarly lacking.   Plaintiff cites no law for his contention that an arrest for reckless driving is (in general) inappropriate.   And in support of his position that Defendant Doyle was acting outside of his jurisdiction, Plaintiff relies on *People v. Davis*, 350 N.W.2d 769 (Mich. Ct. App. 1984).   In *Davis*, the Court noted that "police officers acting outside their jurisdiction have the authority as citizens under M.C.L. § 764.16; M.S.A. § 28.875, given probable cause, to make an arrest for a felony committed in their presence."   *Id.* at 800.   Plaintiff argues that because reckless driving is not a felony, Defendant Doyle had no authority to arrest him.   (Docket no. 31 at 8.)   But while *Davis* confirms that an officer *can* arrest an individual for the commission of a felony outside of his jurisdiction, the corollary does not hold true.   To the contrary, *Davis* also recognizes that statutory exceptions exist under which an offer may also arrest an individual

---

[5] The Michigan Court of Appeals issued a substantially similar finding when addressing Plaintiff's appeal regarding the suppression of evidence.   (Docket no. 33-4 at 7.)

outside his jurisdiction.   *Davis*, 350 N.W.2d at 800 (citing Mich. Comp. Laws §§ 764.2a, 117.34).

Section 764.2a provides, in relevant part, as follows:

(1) A peace officer of a county, city, village, township, or university of this state may exercise the authority and powers of a peace officer outside the geographical boundaries of the officer's county, city, village, township, or university under any of the following circumstances . . .

.   .   .

(b) If the officer is enforcing the laws of this state in conjunction with a peace officer of any other county, city, village, township, or university in which the officer may be

Mich. Comp. Laws Ann. § 764.2a (West).   Defendant Doyle was enforcing the laws of the state of Michigan in conjunction with Saginaw City Police at the time he placed Plaintiff under arrest. Therefore, Plaintiff's argument has no merit.

### c.   Plaintiff's Detention Without Arraignment on Reckless Driving Charges

Plaintiff further asserts that his arrest, even if lawful at the time, became unlawful when he was detained for 13 days without a probable-cause hearing on the charges and when he was ultimately arraigned on different charges.   (Docket no. 30 at 14; docket no. 31 at 5-7.)   With regard to the delay, Plaintiff is correct that "the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest."   *County of Riverside v. McLaughlin*, 500 U.S. 44, 47 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103.   Generally, such a determination made within forty-eight hours of arrest will comply with the *Gerstein* requirement.   *Id.* at 56.   Nevertheless, Plaintiff was not held without a hearing on the warrantless arrest.   Instead, after being preliminarily charged with a weapons violation related to the gun found in his car, Plaintiff's then-existing bond on drug-related

10

charges was revoked by court order on June 1, 2012, the day after his arrest.   Thus, *Gerstein* is inapplicable, and Plaintiff's argument fails.

As noted, Plaintiff was ultimately arraigned on charges related to Kuhlman's murder, not for reckless driving.   Plaintiff points to no law supporting his contention that an arrest is unlawful if the Plaintiff is not ultimately charged with the offense.   For the reasons discussed, *supra*, Defendants had probable cause to arrest Plaintiff for reckless driving.   The ultimate decision not to pursue that charge against him is inapposite.

### 2.   Plaintiff's Fourth Amendment Claim Regarding the Search of his Vehicle and the Seizure of Items Therein

Plaintiff contends that after he was arrested, police conducted an invalid search of his vehicle.   It is undisputed that Defendant Bean found the loaded magazine under the center console of Plaintiff's vehicle while it was parked on the side of the highway, that the vehicle was then moved to the parking lot of the Saginaw Township Police Department, and that Defendants Bean and Gloude then conducted a full search of the vehicle where they discovered, among other items, pills inside the molding of the roof lighting and a weapon hidden in the dashboard.   (*See* docket no. 30 at 10; docket no. 29-4 at 7-8.)   Plaintiff acknowledges that officers may conduct a warrantless search of a vehicle for inventory purposes, so long as they do so pursuant to standardized procedures.   *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987); (*see* docket no. 30 at 15).   Plaintiff argues, though, that the search of his vehicle was invalid because it was not done according to department policy and because it was performed by Defendant Bean for investigatory purposes instead of solely by Saginaw City Police officers for inventory purposes.   (Docket no. 30 at 15-18; docket no. 31 at 9-13.)

Plaintiff is correct that an inventory search may not be conducted solely for investigative

purposes: "An inventory search may not be conducted for purposes of investigation and must be conducted according to standard police procedures." *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998) (citing *Florida v. Wells,* 495 U.S. 1, 5 (1990)). "However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search." *Id.* (citing *United States v. Harvey,* 16 F.3d 109, 112 (6th Cir.), *cert. denied,* 513 U.S. 900, (1994); *United States v. Lewis,* 3 F.3d 252, 254 (8th Cir.1993) (per curiam) (noting that "[t]he presence of an investigative motive . . . does not invalidate an otherwise valid inventory search"), *cert. denied,* 511 U.S. 1111 (1994)). Thus, it is irrelevant whether Defendant Bean had an investigative motive in searching Plaintiff's vehicle so long as the inventory search was otherwise valid, that is, in accordance with standard procedure.

Saginaw Township Police Department procedure states, in relevant part, as follows:

**I.      Policy**

      A.      It shall be the policy of this department to routinely inventory all impounded vehicles.

      B.      The inventory will be limited to places where a person would ordinarily store or leave items of personal property such as glove compartments, above sun visors, front seat areas, rear seat areas, trunks and under the hood.

**II.      Standards for Impounding Vehicles**

      A.      Vehicles may be immediately impounded from public property or private property open to the public under the following circumstances:

.      .      .

      2.      If the vehicle is parked or standing upon the highway in such a manner as to create an immediate public hazard or an obstruction of traffic.

.      .      .

C.   Impounding Attended Vehicles

1.   In the case of arrest of a vehicle driver, that vehicle may, with the driver's permission, be turned over to a licensed passenger in the vehicle who is capable of driving the vehicle.

a.   If no passengers in the vehicle are licensed and/or capable of driving or there are no passengers in the vehicle, the vehicle shall be impounded immediately if failure to do so would result in the vehicle being a traffic hazard.

**III.   Procedure for Impounding Vehicles, Conducting Inventories, and Taking Property for Safekeeping**

A.   A Saginaw Township Police ***Vehicle Impound/Inventory*** form will be completed on __**ALL**__ vehicles that are impounded.

.      .      .

B.   Conducting Inventories on Impounded Vehicles

.      .      .

2.   If the vehicle doors, glove compartment, and trunk are unlocked, or if keys are available, these areas will be inventoried.

3.   No lock shall be forced or broken to accomplish the inventory of a vehicle.

.      .      .

6.   If, for some unforeseen reason, the inventory cannot be performed prior to the vehicle being towed, the officer who will be conducting the inventory shall accompany the vehicle to the impound facility and conduct the inventory there.

7.   The *Vehicle Impound/Inventory* form must be completed by the officer conducting the inventory in the officer's handwriting and must be complete, legible, and exact.

.      .      .

13

(*See* docket no. 29-6.)

Plaintiff was pulled over on the side of the highway, and there were no passengers with him to whom the officers could have released the vehicle.   As Defendants contend, because Plaintiff's vehicle was a traffic hazard, impounding the vehicle was appropriate under department policy. Plaintiff asserts, though, that the officers violated department policy because (1) the vehicle was taken to the police department parking lot instead of to an impound facility; (2) searching under the center console, inside the molding of the lights, and behind the glove box are not part of a standard inventory search; and (3) Defendant Bean conducted the search but Defendant Gloude signed the inventory form.

While Defendants imply that they believe the search itself was legitimate, they rely primarily on the *Rooker-Feldman* doctrine and argue that Plaintiff's claims are an improper attack on a state-court decision.   (Docket no. 32 at 13.)

> Under the *Rooker–Feldman* doctrine, federal courts lack jurisdiction to review a case litigated and decided in state court as only the United States Supreme Court has jurisdiction to correct state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Patmon v. Michigan Supreme Court,* 224 F.3d 504, 506–07 (6th Cir.2000). Federal courts also lack jurisdiction to review constitutional claims that are inextricably intertwined with the state court's decision. *Feldman,* 460 U.S. at 486–87, 103 S.Ct. 1303; *Patmon,* 224 F.3d at 509–10.

*Rowls v. Weaver*, 24 F. App'x 453, 455 (6th Cir. 2001).

> [A] federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

14

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987).

On appeal, Plaintiff argued that the evidence seized during the inventory search should be have been suppressed because the search was invalid.   The Michigan Court of Appeals found as follows:

> Defendant admits that the portion of the inventory search in which Gloude found the bag of Adderall was proper.   Nor does defendant contest the general principle that a warrantless search may be conducted under the automobile exception even after a vehicle is in police custody and no longer subject to being driven away.   *See People v. Carter*, 250 Mich App 510, 515-518; 655 NW2d 236 (2002).   Rather, defendant argues that the initial search of the car at the side of the road was not done pursuant to the department's policy regarding appropriate areas to be searched during an inventory search and that the police did not have sufficient probable cause to continue the extended search of the car following the discovery of the Adderall pills.   Defendant's arguments regarding discovery of the loaded handgun behind the glove box and the loaded magazine under the console must fail.
>
> The loaded handgun was discovered after the officers had ample probable cause to believe that further contraband would likely be found in the car due to the discovery of the Adderall pills, which were tucked up behind the map light, rather than in the console or any other "ordinary" location.   The handgun was properly admitted.
>
> The additional loaded magazine was also admissible.   Leaving aside the question of whether it would have been admissible as evidence found pursuant to a valid initial inventory search, we find that it would be admissible even if it were not.   Once Gloude discovered the pills and began searching the car, it is highly likely that he too would have discovered the loose center console, lifted it up, and inevitably found the magazine.   "The inevitable discovery exception generally permits admission of tainted evidence when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been revealed in the absence of police misconduct."   *People v. Stevens (After Remand)*, 460 Mich 626, 637; 597 NW2d 53 (1999).   Applying the exception under the factual circumstances of this case would not provide an "incentive for police misconduct."   *Id.* at 637 (citation and quotation marks omitted).

(Docket no. 33-4 at 5-6.)   The court further noted that Plaintiff had "set forth no persuasive authority" for finding an error in application of department policy where "two officers worked on

15

the search and one of them testified that he completed an inventory form." (*Id.* at 6 n.1.) Plaintiff's instant claims are inextricably intertwined with the state court's determination in his criminal matter.   Thus, dismissal under the *Rooker-Feldman* doctrine is appropriate.   Moreover, even if the Court did not lack subject-matter jurisdiction, the undersigned agrees with the analysis of the Michigan Court of Appeals and would recommend dismissal on substantive grounds. Therefore, Plaintiff's claims related to the search of his vehicle should be dismissed.

### 3.     Plaintiff's Fourth Amendment Claim Regarding the Taking of his DNA and Fingerprints

Next, Plaintiff contends that Defendants unlawfully took his DNA and a second set of fingerprints while he was in custody.   Plaintiff argues that Defendants' actions violated the Fourth Amendment because (1) he was not a convicted felon at the time they took his DNA and fingerprints, and (2) Defendants obtained a warrant for his DNA on June 6, 2012, but they did not obtain his DNA until June 7, 2012.   (Docket no. 31 at 14-15.)   Plaintiff contends that this one-day delay caused any probable cause to become "stale."   (*Id.* at 14 (citing *United States v. Copeland*, 321 F.3d 582 (2003)).)

As Defendants note, however, Plaintiff's conviction status played no role in their obtaining his fingerprints and DNA; both were obtained pursuant to valid search warrants issued on a probable-cause finding by a state-court district judge, and the accompanying affidavits did not rely on Plaintiff's conviction status.   (Docket nos. 29-5 and 29-8.)   Therefore, Plaintiff's first argument fails.

In arguing that the probable cause for obtaining his DNA had become stale, Plaintiff relies on the following discussion in *Copeland*:

[W]here an officer is in possession of information that creates the basis for probable

16

cause, he is required to act upon this information within a reasonable period of time—otherwise the existence of probable cause is said to have become stale. *See United States v. Henson,* 848 F.2d 1374, 1382 (6th Cir.1988). Whether the facts creating the basis for probable cause have become stale is directly related to the nature of those facts. *Id.* ("In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime[.]") (quoting *United States v. Haimowitz,* 706 F.2d 1549, 1554–55 (11th Cir.1983)); *see also United States v. Akram,* 165 F.3d 452, 456 (6th Cir.1999) ("To determine whether evidence establishing probable cause is 'stale,' we consider the inherent nature of the suspected crime....").

*United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003).   As Defendants note, though,

*Copeland* is inapplicable to the matter at hand.   In *Copeland*, the Court found that

> where an observed parking violation is not ongoing, an officer is required to effect a stop based upon this conduct within a reasonable period of time. Because a parking violation necessarily takes place only when a vehicle is stopped or standing, the time in which a moving vehicle can reasonably be stopped for a parking violation is relatively limited.

*Id.*  Here, though, the crime under investigation was not an ongoing offense, and the probable

cause necessary to obtain Plaintiff's DNA (as set forth in the officer's affidavit) did not expire.

That is, waiting one day to take a buccal swab from Plaintiff was not unreasonable.   Therefore,

Plaintiff's argument fails, and his claims related to his fingerprints and DNA should be dismissed.

### 4.   Plaintiff's Fourth Amendment Claim Regarding the Search of his Residence

In most circumstances, a judicially-secured warrant entitles an officer to immunity "in a

Section 1983 action claiming illegal search."   *Mills v. City of Barbourville*, 389 F.3d 568, 577

(6th Cir. 2004) (citation omitted).   But if "the warrant is so lacking in indicia of probable cause

that official belief in the existence of probable cause is unreasonable, qualified immunity is not

appropriate."   *Id.* (citation omitted).   "Under an 'objective reasonableness' test, the officers 'will

not be immune if, on an objective basis, it is obvious that no reasonably competent officer would

17

have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Id.* (citation omitted). "When the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . or in in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1239 (2012). "[T]he threshold for establishing [an exception to the shield of immunity] is a high one." *Id.*

Whether a search warrant properly establishes probable cause to conduct a search is a legal question. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citation omitted). A decision to issue a warrant is accorded "great deference." *Id.* (citation omitted). To determine if a warrant establishes probable cause, a court "look[s] only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *Id.* (citation omitted). To establish probable cause adequate to issue a legally sufficient search warrant, "the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Brooks*, 594 F.3d at 492. "Whether the affidavit gives rise to this fair probability depends on the totality of the circumstances." *Id.* (citation and internal quotation marks omitted). "The probable cause standard is a practical, non-technical conception that deals with the factual and practical considerations of everyday life." *Id.* (citation and internal quotation marks omitted).

Putting aside for a moment that Detective Thomas McInerney obtained the warrant to search Plaintiff's home (not one of the Defendants in this matter), Plaintiff contends that there was no probable cause for the search of his home because (1) the affidavit "set[s] forth insufficient

18

facts that wouldn't support a finding of probable cause for the search of Plaintiff's residence;" (2) evidence of reckless driving and fleeing and eluding could not be found at his home; (3) Defendants seized Plaintiff's cell phone and laptop computer, which were not specifically described in the warrant; and (4) some of the statements in the affidavit were false.   (Docket no. 30 at 19-23.)

### a.      Probable Cause for the Warrant

Although Plaintiff contends that the affidavit submitted to the district judge did not contain sufficient facts to support a finding of probable cause, his contention is based on what appears to be the wrong standard of proof and an incomplete account of the evidence in the affidavit. Plaintiff sets forth a summary containing some of the key facts contained in the affidavit: (1) at least two African American males wearing ski masks were involved in Kuhlman's shooting; (2) a witness saw three African-American males fleeing the scene on foot; (3) witnesses told police that Kuhlman's dealer-supplier was an African-American male named "Q;" (4) "Q" drove a maroon SUV with chrome wheels; (5) "Q" met Kuhlman earlier the day that he was shot; (6) one witness identified Plaintiff as "Q;" (6) Plaintiff was arrested after trying to elude police in his vehicle, at which time police found a 9mm pistol, a loaded magazine, and two black knit stocking caps.   (*See* docket no. 30 at 20.)   Plaintiff contends that this information "could not place Plaintiff at the scene of the shooting/homicide."   (*Id.*)

As discussed herein, the affidavit need not "place Plaintiff at the scene of the shooting/homicide;" it need only present the judge with a "'a fair probability that contraband or evidence of a crime will be found in a particular place.'"   *Brooks*, 594 F.3d at 492.   Moreover, Plaintiff does not acknowledge that the warrant also notes that a cellular phone stolen from one of

the robbery victims was found in the back yard of the home next to Plaintiff's residence.   Here, the evidence presented to the judge was sufficient to support a finding that evidence of Kuhlman's murder would be found at Plaintiff's residence.   According to the affidavit, Plaintiff, who was Kuhlman's dealer-supplier, and who had been at Kuhlman's home earlier that evening, attempted to elude police and was found in possession of a weapon and ski masks; additional, a cell phone stolen from one of the robbery victims was found close to Plaintiff's residence.   Given the totality of the circumstances, a finding that the affidavit did not contain probable cause is unwarranted. Moreover, even if the Court were to accept Plaintiff's contention that the affidavit was insufficient to support the judge's determination, it was not "so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable."   Therefore, Defendants would still be entitled to immunity.

### b.    Evidence of the Crime

In a tangentially related argument, Plaintiff asserts, without supporting authority, that police could only search his home for evidence related to his arrest for reckless driving. Plaintiff's argument is legally inaccurate.   The warrant plainly stated that officers were searching for "evidence of the homicide of Michael Kuhlman."   (Docket no. 29-10.)   Therefore, Plaintiff's argument fails.

### c.    Seizure of Plaintiff's Laptop and Cell Phone

Plaintiff also argues that Defendants improperly seized his laptop and cell phone during their search:

> Items to be seized pursuant to a search warrant, must be described with particularity to prevent the seizure of one thing under a warrant describing another, but the degree of specificity in a warrant, must be flexible, depending upon the type of items to be seized and the crime involved, and a description is valid if it is as

specific as the circumstances and nature of the activity under investigation permit. *United States v. Blair*, 214 F.3d 690 (2000).   Warrants may not authorize general searches nor may they permit police officers to exercise undirected discretion in determining what to seiz (sic).   *United States v. Gardner*, 537 F.2d 861 (1976).

(Docket no. 30 at 21-22.)   Defendants argue that they did not flagrantly exceed the scope of the

warrant because the warrant sought evidence "including but not limited to" various listed items,

including "victims' cellphones."   (Docket no. 32 at 17-18 (citing docket no. 29-10).)

A search pursuant to a valid warrant may devolve into an invalid general search if the officers "flagrant[ly] disregard ... the limitations of [the] search warrant." *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir.1985). For purposes of general search analysis, we will find that an officer flagrantly disregards the limitations of a warrant only where he "exceed[s] the scope of the warrant *in the places searched*" (rather than the items seized). *See Waller v. Georgia*, 467 U.S. 39, 43 n. 3, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (emphasis added); *see also United States v. Decker*, 956 F.2d 773, 779 (8th Cir.1992) ("The flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of the places searched, and not to cases in which the government indulges in excessive seizures."). The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant. *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir.1999).

"The prohibition against general searches ... serves primarily as a protection against unjustified intrusions on privacy," *Horton v. California*, 496 U.S. 128, 141, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and the broad remedy for such a sweeping Fourth Amendment violation is "the suppression of *all* evidence seized during the search," *Lambert*, 771 F.2d at 93 (emphasis added); *see also United States v. Uzenski*, 434 F.3d 690, 706 (4th Cir.2006) (stating that "blanket suppression" is an "extraordinary remedy" only to be used when the officers' violations of the warrant's limitations are "extreme"). In contrast, the prohibition against the unlawful seizure of a particular item during an otherwise valid search does not invade the defendant's privacy interest but merely "deprives [him] of dominion over his ... property," *Horton*, 496 U.S. at 133, 110 S.Ct. 2301, and the narrow remedy for such a concrete Fourth Amendment violation is the suppression of only the unlawfully seized evidence, *see Waller*, 467 U.S. at 43 n. 3, 104 S.Ct. 2210; *Decker*, 956 F.2d at 779. Thus, where the officers unlawfully seize certain items but do not flagrantly disregard the limits of the warrant by unreasonably searching places not authorized in the warrant, the court must suppress the unlawfully seized items, but "there is certainly no requirement that lawfully seized evidence be suppressed as well." *Waller*, 467 U.S. at 43 n. 3, 104 S.Ct. 2210.

21

*United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (omissions and emphasis in original).   Defendants are correct that the officers did not flagrantly disregard the scope of the warrant in their search, but such a finding is irrelevant with regard to the items seized during that search.

With regard to Plaintiff's cellphone, the undersigned finds that although only the "victims' cellphones" were enumerated in the warrant, the seizure of Plaintiff's cellphone did not exceed the scope of the warrant.   The non-exhaustive list of evidence included in the search warrant was specifically related to items allegedly used during the murder itself and drug-related items linking Plaintiff to Kuhlman as his dealer-supplier.   Plaintiff's cellphone reasonably falls within the confines of these items.   Moreover, though, officers were specifically searching for cellphones located at the residence.

With regard to Plaintiff's laptop, however, the undersigned finds that the officers exceeded the scope of the warrant.   There is no indication that Plaintiff's laptop was connected in any way to Kuhlman's murder or their drug-related interaction.   And to the extent officers relied on the plain-view doctrine to support their seizure, "[f]our factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citation omitted).   The incriminating nature of the laptop (to the extent it was incriminating at all) was not readily apparent at the time of the seizure.

Nevertheless, as the *Garcia* court discussed, "the prohibition against the unlawful seizure

22

of a particular item during an otherwise valid search does not invade the defendant's privacy interest but merely 'deprives [him] of dominion over his ... property,' and the narrow remedy for such a concrete Fourth Amendment violation is the suppression of only the unlawfully seized evidence." *Garcia*, 496 F.3d at 507 (citations omitted).   Plaintiff has failed to show (or even allege) that any information on the laptop was used against him at trial; thus, Plaintiff has failed to show that he suffered any damage as a result of this unlawful seizure.   Notably, Plaintiff does not even claim through his Complaint that the taking of his laptop was a source of injury.   (*See* docket no. 1.at 6.)   And it does not appear that Plaintiff challenged the seizure of his laptop on appeal. (*See* docket no. 33-4.)   Therefore, Plaintiff's claims related to the seizure of his cellphone and laptop should be dismissed.

### d.      The Allegedly False Statements

Finally, Plaintiff alleges that two statements in the affidavit are false: (1) that Plaintiff was driving recklessly and attempting to elude Defendant Doyle at the time he was arrested; and (2) that Defendant Doyle arrested Plaintiff, not the Saginaw City Police.   (Docket no. 30 at 22.)   As Defendants argue, whether Plaintiff was driving recklessly and attempting to elude Defendant Doyle at the time of his arrest is a matter of factual interpretation as made by the affiant; although Plaintiff disagrees with the nature of his arrest, the statement cannot be characterized as false. With regard to which officer arrested Plaintiff, the accuracy of the statement is irrelevant with regard to the probable-cause finding; Plaintiff was arrested regardless of which officer effectuated the arrest.

More notably, though, none of the Defendants in this matter submitted the affidavit for the search warrant.   Detective McInerney executed the affidavit, and Defendants cannot be held

23

liable for the actions of a third party.  Regardless of the factual accuracy of these statements, Defendants did not violate Plaintiff's Fourth Amendment rights by acting on the warrant. Therefore, Plaintiff's claims fail against the instant Defendants.

### 5.     Plaintiff's Claims of False Imprisonment and Malicious Prosecution

Plaintiff does not claim that his arrest, charge, and ultimate prosecution and conviction for murder are inappropriate; to the contrary, Plaintiff states that "[t]he claim at hand, is for the arrest made on I-675 on May 31, 2012.   The murder case is a separate case, but it is referred to because it support (sic) information from the May 31, 2012 arrest."  (Docket no. 30 at 24.)  Plaintiff argues, instead, that because he was not formally charged with and convicted of either reckless driving or fleeing and eluding or on the firearms charge, he was falsely imprisoned and the arrest by Defendant Doyle amounts to malicious prosecution.  (*See id.* at 24-27.)

For a false imprisonment claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause to believe that the suspect committed the charged crime.  *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999); *Sterling v. Tujaka*, 414 F.Supp.2d 727, 742 (E.D.Mich.2006), aff'd, 230 Fed.Appx. 570 (6th Cir.2007).   As discussed, *supra*, Defendants had probable cause to arrest Plaintiff for reckless driving and CCW.

Likewise, to prevail on a malicious prosecution claim "a plaintiff must show, at a minimum, that there was no probable cause to justify [his] arrest and prosecution."  *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir.2003) (citation and internal quotation marks omitted).  A police officer may be liable for malicious prosecution if he made, influenced, or participated in the decision to prosecute.  *Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir.2010). Again, defendants had probable cause to arrest Plaintiff on May 31, 2012.   Additionally, though,

24

Plaintiff does not allege facts or provide evidence to show that Defendants made, influenced, or participated in the decision to prosecute (or not prosecute) Plaintiff on the reckless driving or CCW charges.   Moreover, Plaintiff's claim is inapposite as the prosecutor chose not to prosecute Plaintiff on those charges.   Plaintiff has provided no authority to suggest that a police office may be held liable for malicious prosecution where the state does not move forward with formal prosecution of the crime for which Plaintiff was initially arrested, so long as the arrest was made with probable cause.   Therefore, Plaintiff's claims fail as a matter of law.[6]

### 6.   Qualified Immunity

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "'The defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'"   *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established

---

[6] In their opening brief, Defendants assert that Plantiff's claims run afoul of the *Heck* doctrine, which holds that a plaintiff's Section 1983 claims are not cognizable where a ruling in the plaintiff's favor would necessarily invalidate the plaintiff's prior conviction or sentence.   (*See* docket no. 29 at 28.)   But because Plaintiff is not challenging his arrest, imprisonment, or prosecution on the murder charges, the *Heck* doctrine does not apply.

constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Qualified immunity, however, is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  Therefore, because the Court should dismiss Plaintiff's claims against Defendants on their merits, the Court need not address Defendants' assertion of qualified immunity.

### D.    Conclusion

For the reasons stated above, the undersigned recommends that Defendants' Motion for Summary Judgment [29] be granted and Plaintiff's Motion for Summary Judgment [30] be denied. This matter should be dismissed in its entirety.

## III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:   March 10, 2016             s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

27

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served on Plaintiff Quintel West and counsel of record on this date.

Dated:   March 10, 2016      <u>s/ Lisa C. Bartlett</u>
                                   Case Manager